

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-28-2003

# Ansell v. Green Acres Contr

Precedential or Non-Precedential: Precedential

Docket No. 02-3251

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Ansell v. Green Acres Contr" (2003). *2003 Decisions.* Paper 154.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/154

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed October 28, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No: 02-3251

———

HARRY B. ANSELL,

Appellant

v.

GREEN ACRES CONTRACTING CO., INC.; PAUL
HUMBERSTON; THOMAS PISULA; DOUGLAS SCHIFF

———

On Appeal From The United States District Court
For The Western District of Pennsylvania
(Civ. A. No. 99-624)
District Judge: The Honorable William L. Standish

———

Argued May 14, 2003

Before: RENDELL, SMITH and ALDISERT, *Circuit Judges*

(Opinion Filed: October 28, 2003)

Gregory T. Kunkel [Argued]
Kunkel & Fink, LLP
1208 Allegheny Building
P.O. Box 1839
Pittsburgh, PA 15230

Counsel for Appellant

Charles R. Volk
Jane Lewis Volk [Argued]
The Volk Law Firm
Blaymore I, Suite 301
1606 Carmody Court
Sewickley, PA 15143

Counsel for Appellees

---

**OPINION OF THE COURT**

---

SMITH, *Circuit Judge*:

This employment discrimination case, arising under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, presents a question of admissibility under Federal Rule of Evidence 404(b) of a subsequent good act offered by an employer to demonstrate non-discriminatory intent—namely, the employer's favorable treatment of another older worker. Plaintiff Harry Ansell, who was 45 years old, was terminated by his supervisor, Douglas Schiff, at Green Acres Contracting Company, Inc. ("Green Acres"). Several seasons later, Schiff hired an employee who was the same age as Ansell. Ansell argues that the evidence of this subsequent hiring is irrelevant to his employer's intent as a matter of law. He also argues that evidence of the subsequent act was admitted for an improper purpose and that its unfair prejudice substantially outweighed its probative value. Because we conclude that the evidence was relevant and admitted for a proper purpose, and because its probative value was not substantially outweighed by unfair prejudice, we will affirm the judgment of the District Court.

I.

Green Acres performs highway maintenance work on a seasonal basis. Harry Ansell worked as a laborer and truck driver for Green Acres during each season from 1993 until 1997. At the beginning of the 1997 season, Ansell was assigned to a five person crew led by a new foreman,

Douglas Schiff. Ansell was permanently laid off in December of 1997.

Ansell filed suit in April of 1999 against Green Acres, Schiff, Green Acres' Vice President Paul Humberston, and Green Acres' President Thomas Pisula (collectively "defendants"), seeking damages for discharge in violation of the ADEA and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Con. Stat. Ann. § 951 *et seq.*[1] According to Ansell's theory of the case, Schiff sought to increase his crew's productivity by replacing the older members of his crew with younger workers. At trial, Ansell introduced testimony establishing that Schiff permanently laid off two truck driver/laborers on his crew. In July of 1997 Schiff replaced Roger Myers, age 47, with Scott Miller, age 26, and in December of 1997, Schiff replaced Ansell with Harry Fabian, Jr., age 28. Schiff also hired an additional worker in his twenties, Keith Summers, in July 1997 around the same time he hired Scott Miller.

Defendants responded that Schiff had legitimate, nondiscriminatory reasons for terminating Ansell and offered evidence of four incidents of insubordination involving Ansell. First, in late July of 1997, Ansell insisted that he should be assigned to drive the crew truck based on his seniority, and swore at Schiff when Schiff disagreed. Then in December, Ansell argued with a state inspector about a stop and go paddle used for traffic control, refused to attend a safety meeting, and took time off from work, without permission, to go hunting.

Defendants also presented evidence regarding Schiff's treatment of employees over the age of forty. Specifically, defendants presented the testimony of Anthony Beddingfield, who, at age 45, was hired by Green Acres in August of 1999 for a temporary laborer position and assigned to Schiff's crew. Beddingfield testified that he was

---

1. Ansell also claimed damages under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. § 701 *et seq*, but the District Court granted a motion by defendants for summary judgment on these claims. Ansell did not appeal this ruling.

asked by Schiff to stay on the crew permanently, and that he was still working for Schiff at the time of trial in 2002.

Ansell filed a motion in limine objecting to any testimony by Beddingfield concerning his hiring and treatment by Schiff.[2] Ansell argued that this testimony was inadmissible "other acts" evidence, offered to show propensity under Federal Rule of Evidence 404(b). Ansell further argued that Beddingfield's testimony was not relevant and was unfairly prejudicial. Defendants proffered that Beddingfield's testimony was admissible to show that Schiff lacked an intent to discriminate against older workers. The District Court denied Ansell's motion, declaring that Beddingfield's employment was probative of Schiff's intent and that it was admissible under Rule 404(b). The District Court noted that Ansell had introduced evidence of numerous people under age 40 hired by Green Acres after Ansell was fired, and stated that "if that's 404(b) evidence [of intent], so is this other witness."

The ADEA and PHRA claims were tried before a jury, which returned a verdict in favor of the defendants on July 18, 2002.[3] Ansell appealed, challenging only the District Court's decision to admit the Beddingfield testimony under Rule 404(b). We have jurisdiction over Ansell's appeal pursuant to 28 U.S.C. § 1291.[4] We exercise plenary review over the District Court's interpretation of the rules of

---

2. Ansell did not object to testimony presented by defendants regarding John Bradley, another member of Schiff's crew over the age of forty. Bradley was a flagger who was kept on until the end of the 1997 season. When the 1998 season began, Bradley did not resume work at Green Acres because he had taken a job closer to home. However, defendants' evidence showed that, in June 1998, Bradley called Schiff to ask for a job and was rehired to work on Schiff's crew for the entire season. Bradley himself testified that, as a worker over 40, he was well treated by Schiff. With the Bradley evidence having been admitted without objection, defendants argue that any error with respect to Beddingfield's testimony is harmless. Because we affirm the District Court's decision to admit the Beddingfield testimony, we do not reach this issue.

3. A prior trial in April 2001 resulted in a mistrial due to a hung jury.

4. The District Court had jurisdiction over the ADEA claim pursuant to 28 U.S.C. § 1331, and exercised supplemental jurisdiction over the PHRA claim pursuant to 28 U.S.C. § 1367.

evidence; however, assuming that the evidence could be admissible in some circumstances, we review the District Court's decision to admit that evidence for abuse of discretion. *United States v. Givan*, 320 F.3d 452, 460 (3d Cir. 2003). Admission of evidence is an abuse of discretion if "the district court's action was arbitrary, fanciful or clearly unreasonable. . . . We will not disturb a trial court's exercise of discretion unless no reasonable person would adopt the district court's view." *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412 (3d Cir. 2002) (internal quotations omitted).

## II.

Federal Rule of Evidence 404(b) states, in pertinent part:

> Other Crimes, Wrongs, or Acts.—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . .

Rule 404(b) thus prohibits the admission of other acts evidence for the purpose of showing that an individual has a propensity or disposition to act in a particular manner. *Gov't of the Virgin Islands v. Pinney*, 967 F.2d 912, 914 (3d Cir. 1992). Such evidence may, however, be admitted if offered for a proper purpose apart from showing that the individual is a person of a certain character. *Id.*

The typical Rule 404(b) case presents a prosecutor in a criminal case seeking to introduce evidence of prior bad acts of a defendant. If the purpose of the evidence is to show that the conduct charged was not performed inadvertently, accidentally, or without guilty knowledge and intent (that is, for one of the specific permissible uses outlined in Rule 404(b)), it is admissible. *See, e.g., Givan*, 320 F.3d at 460-62 (discussing admissibility of prior conviction for drug distribution to show knowledge, intent, and absence of mistake with respect to nature of drugs); *United States v. Vega,* 285 F.3d 256, 261-62 (3d Cir. 2002) (discussing admissibility of prior bad acts to show

knowledge with respect to drug conspiracy). If the evidence is presented for the improper purpose of showing a propensity to act in a certain way, it is inadmissible. The evidence admitted in this case differs from garden variety Rule 404(b) matter because it is evidence, not of a prior bad act in a criminal case, but of a subsequent good act in a civil case. Nonetheless, this evidence is encompassed by the plain text of Rule 404(b) which addresses "other . . . acts," not just prior bad acts. *See United States v. Echeverri*, 854 F.2d 638, 645 (3d Cir. 1988) ("[T]here may be cases in which evidence of subsequent . . . acts may properly be admitted under Rule 404(b) [to show knowledge or intent.]"); *see also United States v. Germosen*, 139 F.3d 120, 128 (2d Cir. 1998) ("The fact that the evidence involved a subsequent rather than prior act is of no moment."). Likewise, Rule 404(b) applies equally to civil, as well as criminal, cases. Fed. R. Evid. 404 advisory committee's note.

For other acts evidence to be admissible under the exceptions listed in Rule 404(b), (1) the evidence must have a proper purpose; (2) it must be relevant under Rule 401 and 402; (3) its probative value must outweigh its prejudicial effect under Rule 403; and (4) the court must charge the jury to consider the evidence only for the limited purpose for which it was admitted. *United States v. Sampson*, 980 F.2d 883, 886 (3d Cir. 1992) (citing *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)). Ansell argues that the Beddingfield testimony fails the first three elements of this test, *i.e.*, that the evidence was admitted for an improper purpose, that it is irrelevant, and that any probative value is outweighed by unfair prejudice. We address each of these arguments in turn.

## A.

To be admissible under Rule 404(b), other acts evidence must be offered for a proper purpose, *i.e.*, a purpose other than showing that an individual has a propensity or disposition for certain activity. *Pinney*, 967 F.2d at 914. We have held that "a court must be able to articulate a way in which the tendered evidence logically tends to establish or refute a material fact in issue, and that chain of logic must

include no link involving an inference that a bad person is disposed to do bad acts." *Id.* at 915; *accord Becker v. ARCO Chem. Co.*, 207 F.3d 176, 191 (3d Cir. 2000).

The District Court ruled that Beddingfield's testimony was offered to establish that Schiff did not have a discriminatory intent when he discharged Ansell, intent being an enumerated proper purpose under Rule 404(b). Ansell contends that Beddingfield's testimony was not evidence of intent, but rather was evidence of Schiff's good character or propensity not to discriminate against older workers, introduced to show that he acted "in conformity therewith" when he fired Ansell. As such, Ansell argues that Beddingfield's testimony is classic propensity evidence that is inadmissible under Rule 404(b).

The nature of the underlying case illustrates the true purpose of Beddingfield's testimony. At trial, the parties did not dispute that Ansell made out a prima facie case of age discrimination under the ADEA. Likewise, there was no dispute that Green Acres advanced a legitimate, nondiscriminatory reason for its decision to fire Ansell. Accordingly, the sole question for the jury was whether the legitimate reason advanced by Green Acres was the true reason for the termination, or whether that reason was simply a pretext for unlawful discrimination. *See generally Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc) (discussing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Evidence of an employer's conduct towards other employees has long been held relevant and admissible to show that an employer's proffered justification is pretext. *See, e.g., McDonnell Douglas Corp.*, 411 U.S. at 804 (stating that evidence that employees of another race were treated differently from the plaintiff under comparable circumstances is "[e]specially relevant" to whether employer's proffered explanation is pretextual); *Becker v. ARCO Chemical Co.*, 207 F.3d 176, 194 n.8 (3d Cir. 2000) (citing cases holding that, "as a general rule, evidence of a defendant's prior discriminatory treatment of a plaintiff or other employees is relevant and admissible under the Federal Rules of Evidence to establish whether a defendant's employment action against an employee was

motivated by invidious discrimination"). A plaintiff alleging employment discrimination may challenge the employer's proffered explanation by showing "that the employer treated other, similarly situated persons out of his protected class more favorably, or that the employer has discriminated against other members of his protected class or other protected categories of persons." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994); *accord Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1214-15 (3d Cir. 1995) (holding that "evidence as to [a supervisor's] attitude toward other older employees and the manner in which he treated them" was relevant to whether supervisor "harbored a discriminatory attitude against older workers, and if credited, that evidence made the existence of an improper motive for the discharge decision more probable."). Thus, other acts are admissible under Rule 404(b) in the employment discrimination context for the proper purpose of establishing or negating discriminatory intent. *E.g., Coletti v. Cudd Pressure Control*, 165 F.3d 767, 776-77 (10th Cir. 1999); *Heyne v. Caruso*, 69 F.3d 1475, 1479-80 (9th Cir. 1995).

The District Court admitted evidence offered by Ansell showing that Green Acres hired numerous individuals under the age of 40 after Ansell was fired. In his closing argument, Counsel for Ansell read the court's instruction on pretext back to the jury and then argued:

> Production evidently does not improve for Doug Schiff, and what is Doug Schiff's first move? What does he do? He fires Roger Myers. He fired Roger Myers, who, at that time, was 47. . . .
>
> . . .
>
> Who does Doug Schiff replace Roger Myers with? Scott Miller. Age twenty-six. Scott replaces Roger, and then he also hires Keith Summers, who was age twenty-five.

Counsel for Ansell concluded:

> And I submit to you that Doug had accomplished what he set out to do. He accomplished getting rid of the older workers to increase productivity. And you could see the difference in the ages. You could see from

> Kevin and Keith, the difference in the young worker. That's what Doug wanted. Doug wanted to get younger guys. He wanted them, and he thought that was going to correct his production problems.

> When we talked in openings — when I talked to you in opening statements, I said in discrimination cases, actions speak louder than words. Well, what are Doug Schiff's actions? He got rid of the older workers and he replaced them with the younger ones.

Beddingfield's testimony was offered to rebut Ansell's argument that his termination was motivated by an overarching plan to eliminate older workers, and to corroborate defendants' evidence of a legitimate, nondiscriminatory reason for Ansell's termination. In her proffer, counsel for defendants explained: "[Counsel for Plaintiff] has tried to show discriminatory intent by showing how [Schiff] treated one other individual over forty; that is, Roger Myers. So, we should be permitted to respond to that by showing intent with another employee over forty." And in its closing argument, counsel for defendants stated: "If [Schiff] didn't want guys on his crew who were over forty, why did he talk to Tony Beddingfield to stay on? . . . [D]oes it show an intent to create a youth movement? Does it show an intent to design this crew that's all young men or women? No."

The evidence offered by both defendants and Ansell was not predicated upon an inference that Schiff had a propensity to act in a certain way. Indeed, Schiff's *actions* were never in dispute. Rather, the sole question was Schiff's intent when he acted, or, more precisely, whether the reason offered by Schiff was pretextual. *See, e.g., Heyne*, 69 F.3d at 1480 (holding that evidence of employer's sexual harassment of other employees was inadmissible to prove that plaintiff herself was harassed, but was admissible to show employer's motive or intent in discharging plaintiff).

The principal case on which Ansell relies illustrates this distinction. In *Becker*, an ADEA plaintiff introduced evidence that his employer had previously asked him to fabricate a reason to terminate another worker. 207 F.3d at

194. We held that such evidence was inadmissible to show that the employer subsequently fabricated a reason to terminate the plaintiff. The evidence offered in *Becker*, therefore, was not offered to show intent, but to show *action* in conformity with the prior acts—the fabrication of evidence to support a termination. Nevertheless, we were careful to note that plaintiff's evidence might be admissible under Rule 404(b) to show discriminatory intent. *Id.* at 194 n.8 (citing cases for the proposition that "evidence of a defendant's prior discriminatory treatment of a plaintiff or other employee is relevant and admissible" to establish defendant's motive). The evidence in *Becker* did not, however, establish the other employee's age, and therefore was not probative of the employer's intent to discriminate against workers in the protected class. *Id.* at 194 n.8. There, the evidence was probative only if the jury were to conclude that, in conformity with a past act, the employer fabricated a reason to terminate the plaintiff. Under Rule 404(b), such evidence is inadmissible.[5]

---

5. The other cases relied on by Ansell, *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507 (D.C. Cir. 1995), and *McCluney v. Jos. Schlitz Brewing Co.*, 728 F.2d 924 (7th Cir. 1984), are similarly distinguishable. In *McCluney*, the plaintiff claimed to have been wrongfully terminated for his opposition to an allegedly discriminatory transfer policy. The trial court, however, accepted the employer's explanation of its motivation for the plaintiff's dismissal, holding that the plaintiff's evidence was insufficient to support a finding that the plaintiff had actually challenged the transfer policy as discriminatory. *Id.* at 926-27. The Seventh Circuit agreed with the District Court that evidence offered by plaintiff regarding his prior complaints about sexual discrimination was inadmissible to show that plaintiff acted similarly with respect to the transfer policy. *Id.* at 929.

In *Neuren*, the employer claimed that it terminated plaintiff for failure to meet deadlines and introduced evidence that the plaintiff had experienced similar performance problems with another employer. 43 F.3d at 1510. The D.C. Circuit held that the evidence should not have been admitted because it was offered to show that, in conformity with her prior conduct, the plaintiff had, in fact, continued to miss deadlines. *Id.* at 1511. In both *McCluney* and *Neuren*, therefore, the proposition at issue was whether plaintiffs had *acted* in a certain manner, not plaintiffs' intent in so acting. Accordingly, evidence that those plaintiffs had engaged in prior acts similar to those alleged was inadmissible under Rule 404(b).

Here, defendants introduced into evidence the fact that Beddingfield was 45 years old when Schiff asked him to stay on with the crew. This evidence thus purported to rebut Ansell's theory that he was fired as part of a broader plan to "get[ ] rid of the older workers to increase productivity," and to support the legitimate reason advanced by defendants for the termination. We conclude that Beddingfield's testimony was admitted for the proper purpose of establishing Schiff's intent when he terminated Ansell.

## B.

Evidence is relevant if it makes "the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. As discussed above, evidence regarding an employer's treatment of other members of a protected class is especially relevant to the issue of the employer's discriminatory intent. *Becker*, 207 F.3d at 194 n.8.

Ansell nevertheless argues that Schiff's treatment of Beddingfield in 1999 is not relevant to Schiff's intent when terminating Ansell because the treatment was favorable and occurred several years after Ansell's termination, at a time when productivity was no longer an issue. Based on these distinctions, Ansell suggests that Schiff's treatment of Beddingfield did not make it any more or less probable that Schiff was acting with discriminatory intent when firing Ansell.[6]

Ansell cites no authority for the proposition that an employer's favorable—as opposed to discriminatory—treatment of other employees is irrelevant to intent. Nor

6. Ansell's trial counsel noted in his cross-examination of Beddingfield and his closing argument that Schiff's subsequent hiring of Beddingfield occurred three months after Schiff was served with notice of Ansell's lawsuit. Ansell does not suggest on appeal that this affected the relevance of that subsequent hiring. We thus have no reason to consider in this appeal whether actions taken by an employer after he becomes aware of a discrimination suit can have any bearing on that employer's intent at the time of the adverse employment action.

does Ansell offer any reason why favorable treatment would not make the presence or absence of discriminatory intent "more probable or less probable." Instead, Ansell cites cases holding that a defendant employer is not entitled to dismissal or summary judgment simply because it has treated other members of the protected class favorably. *E.g.*, *Connecticut v. Teal*, 457 U.S. 440, 455 (1982). Far from suggesting that evidence of favorable treatment is irrelevant, *Teal* states: "Proof that [a] work force was racially balanced or that it contained a disproportionately high percentage of minority employees is not wholly irrelevant on the issue of intent when that issue is yet to be decided." *Id.* at 454 (internal quotation omitted). While not conclusive, an employer's favorable treatment of other members of a protected class can create an inference that the employer lacks discriminatory intent. *See, e.g., Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 354 (3d Cir. 1999) ("The fact that a female plaintiff claiming gender discrimination was replaced by another woman might have some evidentiary force and it would be prudent for a plaintiff in this situation to counter (or explain) such evidence."). Accordingly, that Beddingfield testified he was treated favorably rather than unfavorably provides no basis to challenge the relevancy of his testimony.

Ansell further argues that Schiff's treatment of Beddingfield in 1999 is too remote to be relevant to the question of Schiff's discriminatory intent when he fired Ansell in 1997. According to Ansell, Schiff sought out a younger workforce in 1997 in response to productivity concerns raised that year. According to Ansell, Schiff's actions vis-a-vis Beddingfield twenty months later were not relevant as a matter of law because they were too far removed in time, and occurred when productivity was no longer a concern.

Subsequent actions by an employer against co-workers may be less probative of an employer's intent than prior actions "because the logical relationship between the circumstances . . . and the employer's decision to terminate is attenuated." *Coletti*, 165 F.3d at 777. That is not to say, however, that subsequent acts can have no probative value; they may still be relevant to intent. *Echeverri*, 854 F.2d at

645; *cf. Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 132-33 (3d Cir. 1997) (age-discriminatory comments made by CEO and other supervisors one year after plaintiff's termination were relevant to show managerial attitudes). A court should consider the passage of time between the other act and the act alleged to be discriminatory. There is a point at which a prior or subsequent act becomes so remote in time from the alleged discriminatory act at issue, that the former cannot, as a matter of law, be relevant to intent. *See, e.g., Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 112 (3d Cir. 1999) (certain prior acts of sexual harassment against plaintiff inadmissible because they were too remote in time); *cf. Echeverri*, 854 F.2d at 645 (presence of cocaine in defendant's apartment four years after last overt act of RICO and drug conspiracy at issue, and 18 months after termination of the conspiracy, was not relevant to conspirators' knowledge or intent). Similarly, changed circumstances may also affect whether or not a subsequent good act is relevant. *See, e.g., United States v. Hill*, 40 F.3d 164, 168-69 (7th Cir. 1994) (excluding evidence offered by defendant, who was accused of stealing a check from the mail, that she failed to steal valuables placed before her by postal inspectors in a sting operation occurring five months after the offense; passage of time, combined with defendant's awareness that she was a suspect, rendered her failure to commit a similar crime "only tangentially relevant").

There is, however, no bright line rule for determining when evidence is too remote to be relevant. *See, e.g., United States v. Pollock*, 926 F.2d 1044, 1048 (11th Cir. 1991) ("Indeed, decisions as to impermissible remoteness are so fact-specific that a generally applicable litmus test would be of dubious value."). Any such determination must be based on the potential the evidence has for giving rise to reasonable inferences of fact which are "of consequence to the determination of the action," Fed. R. Evid. 401, and will not be disturbed on appeal unless it amounts to an abuse of discretion, *Glass v. Phil. Electric Co.*, 34 F.3d 188, 191 (3d Cir. 1994). Here, we cannot say that the District Court abused its discretion. A reasonable person could infer that Schiff's hiring and treatment of Beddingfield made it less likely that Schiff acted with discriminatory intent when he

terminated Ansell. The passage of time and purportedly changed circumstances were proper issues for counsel to argue to the jury, and for the jury to consider in weighing the evidence. *See, e.g., Fitzgerald v. Henderson*, 251 F.3d 345, 365 (2d Cir. 2001) ("Any question as to the weight to be accorded the [other acts evidence] in connection with [the later discrimination] claims is, of course, a matter for the jury.").

### C.

Federal Rule of Evidence 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." A district court's explicit balancing analysis under Rule 403 should only be disturbed if it is "irrational or arbitrary." *Abrams*, 50 F.3d at 1213 (upholding district court's determination that testimony by other co-workers alleging age-based discrimination was more probative than prejudicial). Where the district court fails to explicitly articulate the Rule 403 balancing: "we [either] decide the trial court implicitly performed the required balance; or, if we decide the trial court did not, we undertake to perform the balance ourselves." *Glass*, 34 F.3d at 192 (internal quotation omitted); *accord United States v. Mastrangelo*, 172 F.3d 288, 295 (3d Cir. 1999). In this case, because the District Court did not articulate a balancing analysis, we undertake that analysis here.

Ansell claims that the danger of unfair prejudice outweighed the probative value of the subsequent acts evidence provided by Beddingfield. He argues that the probative value of the evidence was minimal because of its remoteness in time and the changed circumstance, and that such probative value was outweighed by the prejudice arising from the admission of this evidence since it changed the outcome of the case and resulted in a verdict in favor of defendants. However, "[p]rejudice does not simply mean damage to the opponent's cause." *Goodman v. Pa. Turnpike Comm'n*, 293 F.3d 655, 670 (3d Cir. 2002) (quoting 1 McCormick on Evidence § 185 at 645 (John W. Strong, et al. eds., 5th ed. 1999)).

> [T]he . . . prejudice against which the law guards [is] . . . *unfair* prejudice— . . . prejudice of the sort which cloud[s] impartial scrutiny and reasoned evaluation of the facts, which inhibit[s] neutral application of principles of law to the facts as found. . . . [P]rejudice does not simply mean damage to the opponent's cause. If it did, most relevant evidence would be deemed prejudicial.

*Id.* (internal quotations omitted).

Unfair prejudice under Rule 403 could arise if a jury uses 404(b) evidence to infer propensity rather than intent. *See Robert S. v. Stetson School, Inc.*, 256 F.3d 159, 171 (3d Cir. 2001). However, Ansell did not raise this possible improper use as a basis for unfair prejudice, nor did he request a limiting instruction at trial which could have cured such prejudice.[7] Because Ansell did not request a limiting instruction at trial, nor raise the failure to give a limiting instruction as an issue on appeal (either with respect to unfair prejudice or as the fourth prong of Rule 404(b) admissibility), this argument is waived. *See, e.g., FDIC v. Deglau*, 207 F.3d 153, 169 (3d Cir. 2000) (issues not raised in appellant's brief are waived); *Barrett v. Orange County Human Rights Comm'n,* 194 F.3d 341, 348 n.1 (2d Cir. 1999) (where counsel did not request limiting instruction, district court was not required to give one *sua sponte* for out of court statements by commissioners admitted to show that the commission was motivated to terminate plaintiff because of insubordinate behavior rather than his protected speech); *Palmquist v. Selvik*, 111 F.3d 1332, 1343 (7th Cir. 1997) (counsel who did not request limiting instruction at close of evidence waived right to challenge failure to give instruction); *cf. also United States v. Curtis*, 280 F.3d 798, 802 (7th Cir. 2002) (no plain error where

---

7. "Fed. R. Evid. 105 [ ] provides that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted." *Huddleston*, 485 U.S. at 691-92; *see also Givan,* 320 F.3d at 461-62 (recognizing that a limiting instruction is the primary means by which the prejudicial effect of other acts evidence is minimized and explaining that "it is a basic tenant of our jurisprudence that a jury is presumed to have followed the [limiting] instructions the court gave it").

defendant did not request and judge did not give limiting instruction with respect to 404(b) evidence); *United States v. Simmons*, 679 F.2d 1042, 1050 (3d Cir. 1982) (where defendant did not object to 404(b) prior bad acts evidence or request a limiting instruction, its admission was not plain error).

Ansell also suggests that he was unfairly prejudiced because the admission of evidence of Schiff's treatment of Beddingfield improperly indicated to the jury that Ansell had to prove that Schiff was still discriminating several years later. We can conceive of no way the jury reasonably could have concluded that continuing discrimination was an element of the plaintiff's case. Certainly, the jury was not instructed that continuing discrimination was part of the plaintiff's burden of proof, nor did counsel argue any such theory of the case.

Ansell has not demonstrated unfair prejudice arising from Beddingfield's testimony. Thus, it was impossible for the probative value of this evidence, even if minimal, to be substantially outweighed by unfair prejudice.

### III.

In the end, we return to the fact that "[t]he drafters contemplated that Rule 404(b) would be construed as a rule of 'inclusion' rather than 'exclusion.'" *United States v. Scarfo*, 850 F.2d 1015, 1019 (3d Cir. 1988). Because we hold that the District Court did not abuse its discretion in admitting Schiff's treatment of Beddingfield as evidence bearing on his prior intent with respect to Ansell, we will affirm the judgment of the District Court.

A True Copy:
    Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*