

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-27-2006

# USA v. Tinsley

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4245

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Tinsley" (2006). *2006 Decisions.* Paper 1386.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1386

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-4245

———

UNITED STATES OF AMERICA

v.

THEODORE TINSLEY,

Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 03-cr-00798)
District Judge: Honorable Petrese B. Tucker

———

Argued January 31, 2006

Before: McKEE, VAN ANTWERPEN, and SILER,[*] <u>Circuit Judges</u>.

(Filed March 27, 2006)

Maureen Kearney Rowley
David L. McColgin
Robert Epstein (Argued)
Defender Association pf Philadelphia
Federal Court Division
Suite 540 West – The Curtis Center
601 Walnut Street
Philadelphia, PA 19106

———

[*]Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

*Counsel for Appellant*

Patrick L. Meehan
Robert A. Zauzmer
John M. Gallagher (Argued)
Office of the United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

*Counsel for the Government*

_____

OPINION OF THE COURT

_____

VAN ANTWERPEN, <u>Circuit Judge</u>.

Appellant Theodore Tinsley was convicted by a jury on July 16, 2004, of one count each of gun possession in furtherance of a drug trafficking crime (count 1), felon in possession (count 2), and possession of crack cocaine with intent to distribute (count 3). On October 22, 2004, the District Court sentenced Tinsley to 197 months imprisonment. This appeal stems first from the District Court's decision, before trial, to disqualify Tinsley's retained counsel on the ground that counsel might be called as a witness to describe having seen, handled, and discussed a similar gun in the possession of Tinsley's girlfriend four to five years prior to the charged offenses. Second, Tinsley appeals the District Court's exclusion, as hearsay, of certain testimony by a defense witness regarding threatening phone calls received by Tinsley, the contents of which he recounted to the witness. We have jurisdiction pursuant to 18 U.S.C. § 1291, and will affirm.

2

I.

Because we write solely for the benefit of the parties, we state the facts only as they pertain to our analysis.

In the early morning of October 17, 2003, Tinsley was spotted driving by two law enforcement officers who knew from recent encounters that Tinsley had a suspended license; they also noticed that his license plate was not illuminated as required by law. After briefly attempting to elude the officers, Tinsley was pulled over to the side of the road. When ordered to exit the car, Tinsley refused, became verbally and physically agitated, and assaulted the officers. During the ensuing struggle, a Tech-9 machine pistol fell from his waistband onto the street. Eventually the officers and reinforcements succeeded in subduing Tinsley and placing him in a patrol car, where Tinsley broke a window and bent the door frame. A search of Tinsley's clothing revealed about 16-18 grams of crack cocaine. No drug paraphernalia was found on his person or in his vehicle. The gun was recovered and found to be fully loaded, with the serial number removed.

Tinsley was indicted on December 3, 2003, by a federal grand jury on three counts: Possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); Felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and Possession with intent to distribute more than 5 grams of cocaine base ("crack"), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii). In the District Court for the Eastern District of Pennsylvania, which had jurisdiction pursuant to 18 U.S.C. § 3231, Tinsley pleaded not

3

guilty to all three counts of the indictment.

Following an initial appearance, Tinsley's retained counsel informed both the Government and the Bureau of Alcohol, Tobacco, and Firearms, that counsel had seen, about four to five years earlier, a Tech-9 while at Tinsley's girlfriend's home. Counsel said he had handled the pistol and had discussed it with Tinsley's girlfriend. Following this disclosure, Tinsley's counsel refused the Government's request that he withdraw voluntarily from the case. The Government then filed a motion to preclude counsel from representing Tinsley, on the ground that he might be called as a material witness in the case if, for example, Tinsley claimed the gun had been planted by the police officers during his arrest. The District Court held a hearing at which it heard argument from both sides, and ultimately granted the Government's motion to preclude, stating that "while it [counsel's potential testimony] does not go directly to an element of the offense against this defendant, it is relevant and can be relevant for purposes of proving the case by the government." Tinsley was subsequently represented by the Federal Defender's Association.

During the first phase of a four-day bifurcated trial, Tinsley presented as a defense to counts 1 and 3 that he was carrying the gun for self-defense, not in furtherance of a drug trafficking crime. He presented a witness, Kadedra Holmes, who testified that Tinsley had been shot at several months prior to his arrest while attempting to break up a fight at a nightclub. However, the District Court refused, on the grounds of inadmissible hearsay, to allow Holmes to testify that before his arrest, she was in Tinsley's presence when he received

4

several phone calls allegedly threatening his life. She did not hear the content of the calls personally, but Tinsley related the calls to her. The jury subsequently convicted Tinsley of both counts 1 and 3, and in the second phase of the trial, convicted him of count 2, on the basis of a stipulated previous felony conviction. On October 22, 2004, the District Court sentenced Tinsley to 197 months imprisonment, comprising 137 months for counts 1 and 3, and 60 months to be served consecutively for count 2, and eight years of supervised release. Tinsley now appeals both the District Court's pre-trial disqualification of his attorney, and the exclusion on hearsay grounds of Holmes's testimony regarding the threatening phone calls.

## II.

In reviewing a District Court's decision to disqualify an attorney, "First, we exercise plenary review to determine whether the district court's disqualification was arbitrary – 'the product of a failure to balance proper considerations of judicial administration against the right to counsel.'" United States v. Stewart, 185 F.3d 112, 120 (3d Cir. 1999) (quoting United States v. Voigt, 89 F.3d 1050, 1074 (3d Cir. 1996)). Second, if the decision was not arbitrary, we then review for abuse of discretion. Id. We review the District Court's application of the Federal Rules of Evidence for abuse of discretion. United States v. Saada, 212 F.3d 210, 220 (3d Cir. 2000).

## III.

### A. Disqualification of Counsel

5

In its Motion to Preclude, the Government argued that because Tinsley's counsel had previously seen a similar gun in the possession of Tinsley's girlfriend, counsel might be called as a material witness to testify to the sighting. For example, Tinsley might claim that the gun had been planted during his arrest, at which point the Government would seek Tinsley's counsel's testimony. This, the Government argued, would inevitably create a conflict of interest on the part of Tinsley's counsel. Tinsley argued in response that the conflict was only potential, and that the origin of the gun was not a matter at issue in the trial, therefore his counsel was not a "necessary" witness and should not be disqualified. For the reasons that follow, we find that the District Court did not err in disqualifying Tinsley's counsel on the basis of a potential conflict of interest.

As stated above, our inquiry is two-tiered. We first review whether the District Court's decision was arbitrary. We look for such elements as a reasoned decision and a developed record. Voigt, 89 F.3d at 1074. Second, if the decision was not arbitrary, we ask whether the District Court abused its discretion in disqualifying Tinsley's counsel. For the reasons set forth below, the District Court's decision was neither arbitrary nor an abuse of discretion.

Under United States v. Merlino, 349 F.3d 144 (3d Cir. 2003), we find that the decision to disqualify Tinsley's counsel was not arbitrary – "the product of a failure to balance proper considerations of judicial administration against the right to counsel.'" Stewart, 185 F.3d at 120 (quoting Voigt, 89 F.3d at 1074). Merlino involved a lawyer who,

6

on behalf of his client, visited a potential government witness in prison, passed messages suggesting that the witness could return to Philadelphia without danger from the defendant's crime organization, discussed the identity of the new crime boss, and attempted to give the witness money. The District Court in Merlino considered all the evidence the parties wished to submit, questioned the parties, and heard oral argument before disqualifying the lawyer. 349 F.3d at 150. Here, the District Court was presented with a factually-detailed motion from the Government; the court heard oral argument from both sides; Tinsley's counsel did not dispute that he had seen the gun and spoken with Tinsley's girlfriend about it; and the court identified the potential – indeed likely – conflict of interest that would arise even if Tinsley's counsel was not called as a witness. Similarly, as Tinsley admitted at argument, there were no disputed facts regarding the earlier incident, and therefore the lack of factual findings is not surprising.

All of these factors weigh heavily in favor of finding that the District Court's decision was not arbitrary. We are also reassured by the District Court's detailed questioning of Tinsley to ensure that he would not be unreasonably adversely-impacted by the need to obtain new counsel. It is evident from the record that the District Court was concerned about the defendant's right to counsel as well as the conflict of interest, and under such circumstances we will not elevate form over substance and require a District Judge to state

explicitly his or her cognizance of a defendant's Sixth Amendment right to counsel,[1] or to state "I am now balancing the defendant's right to counsel against considerations of judicial administration."[2]

We recognize that <u>Merlino</u> is potentially distinguishable because of, for example, the lack of a written memorandum of decision here, and the fact that the relevant defendant in <u>Merlino</u> had only one of his two retained lawyers disqualified and was therefore never deprived of both his counsel of choice. These are small distinctions however, and nonetheless, we find that <u>Merlino</u>'s rationale easily extends to cover the case at bar.[3]

The second step of our inquiry asks whether the District Court's non-arbitrary decision to disqualify Tinsley's counsel was nonetheless an abuse of discretion. "A criminal defendant's Sixth Amendment right to counsel of one's choice is not absolute; 'where considerations of judicial administration supervene, the presumption in favor of counsel of choice is rebutted and the right must give way.'" <u>Merlino</u>, 349 F.3d at 150 (quoting <u>Voigt</u>,

---

[1]We reject Tinsley's assertion at argument that the District Court was not aware that Tinsley had a "right to counsel of choice." We also note that the Government explicitly cited <u>Merlino</u> – our leading case on the subject of disqualification of counsel of choice and in general – in its disqualification motion.

[2]In an analogous context, we have not hesitated to find satisfied the requisite balancing of probative value and potential prejudicial impact under Fed.R.Evid. 403, even where the District Court does not explicitly go through a balancing inquiry. <u>See</u>, <u>e.g.</u>, <u>Ansell v. Green Acres Contracting Co.</u>, 347 F.3d 515 (3d Cir. 2003).

[3]Here, the potential conflict regarding Tinsley's counsel was apparently known at the time of Tinsley's arraignment, and the Federal Defenders Association was actually appointed to represent him for a period of time. His counsel's potential disqualification can therefore hardly be said to have caught Tinsley completely off-guard.

89 F.3d at 1074). Tinsley argues that the District Court's decision was erroneous because his counsel was not a "necessary" witness. We have never imposed such a requirement. Instead, in Merlino we stated that the lawyer could have been appropriately disqualified because he *might* be called as a witness, and "disqualification may also be appropriate where it is based solely on a lawyer's personal knowledge of events likely to be presented at trial, even if the lawyer is *unlikely* to be called as a witness." Id. at 152 (emphasis added). This case is no different. The District Court correctly found that a conflict was present because Tinsley's counsel might be called as a witness if it became necessary to prove Tinsley's previous possession of the gun. If he remained in the case, we do not see how Tinsley's counsel could ethically decide whether or not to strategically present a planted-evidence defense. See Merlino, 349 F.3d at 152 (noting that counsel was put in a "compromised position" given that the defendant "employed a 'mob-denial' defense at trial"); Stewart, 185 F.3d at 122 ("[T]he district court could not accept [the defendant's] assurances that he would not pursue an alternate strategy at trial."). We find that the District Court did not abuse its discretion in disqualifying Tinsley's counsel based on this conflict.

## B. Hearsay Evidence

Tinsley next challenges the District Court's exclusion of Kadedra Holmes's testimony regarding what Tinsley told her about the allegedly threatening phone calls he received before his arrest. Tinsley alleges that this testimony was admissible as non-hearsay evidence as it showed Tinsley's state of mind (fear), and was not being used for the truth of the matter

9

(that Tinsley was in fact being threatened). The District Court excluded this testimony as inadmissible hearsay. We find that the District Court did not abuse its discretion.

Tinsley offers on appeal two justifications for the testimony – state of mind, under Fed.R.Evid. 803(3), and excited utterance, under Fed.R.Evid. 803(2). While we conclude that Holmes's testimony might ultimately have been admissible under one of these exceptions, the decision to exclude was well within the District Court's discretion given the minimal proffer made at the time. Fed.R.Evid. 803(3) permits "statement[s] of the declarant's then existing state of mind, emotion, sensation . . . but not including a statement of memory or belief to prove the fact remembered or believed . . . ." Before the District Court, however, Tinsley argued that Holmes's testimony went "to [Tinsley's] state of mind in terms of what he reasonably *believed*." (emphasis added). The proffer also did not include any indication that Holmes would testify that Tinsley said, "I'm afraid" – an actual statement of his state of mind. There was no abuse of discretion in excluding evidence based on this proffer.

Tinsley also argues that Holmes's testimony was admissible under Fed.R.Evid. 802(2), which permits "statement[s] relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Before the District Court, Tinsley argued only that "even if, as counsel suggests, there were a hearsay issue here, this is clearly an excited utterance. But that is . . . not really what I need to offer it for. Just for his state of mind . . . ." Whether or not Holmes's testimony ultimately would

10

be admissible under the excited utterance exception, we cannot conclude that the District Court abused its discretion in rejecting such a limited proffer that provided no foundation for applying this hearsay exception. We will therefore affirm the District Court's refusal to admit Holmes's testimony on this point.

IV.

For the foregoing reasons, we conclude that the District Court properly disqualified Tinsley's retained counsel and excluded Kadedra Holmes's hearsay testimony regarding threatening phone calls. We have considered all other arguments made by the parties on appeal, and conclude that no further discussion is necessary.

*United States v. Tinsley*, 04-4245

McKee J., <u>Dissenting</u>

Although I am compelled to dissent, I note at the outset that there is much to commend the majority's Sixth Amendment analysis. Indeed, if we had the luxury of writing on the proverbial "blank slate," I would have no hesitation joining it. For reasons that are not at all apparent on this record, Tinsley's retained counsel told the prosecutor that 4 or 5 years earlier, he (counsel) had seen a gun similar to the one in question here, in the home of Tinsley's girlfriend. That disclosure created the possibility that counsel would be called to testify against his own client if Tinsley employed a trial strategy of arguing that police planted the gun on him during his arrest. The District Court was understandably concerned that the government might call defense counsel as a witness against his own client in the

middle of a jury trial. Accordingly, the court granted the government's motion to remove counsel, and Tinsley proceeded with an attorney who was not compromised by a potential conflict.

Nevertheless, because this record does not meet the requirements set forth in *United States v. Voigt*, 89 F.3d 1050 (3d Cir. 1996), and because I am also troubled by the majority's resolution of Tinsley's hearsay claim, I must respectfully dissent.

### I. Tinsley's Sixth Amendment Claim.

The right to counsel guaranteed by the Sixth Amendment includes the right to counsel of choice. *Powell v. Alabama*, 287 U.S. 45, 53 (1932). However, the right to counsel of choice must give way when it is outweighed by considerations of judicial administration. *Voigt*, 89 F.3d at 1074. In *Voigt* we explained that cases involving the Sixth Amendment right to counsel of choice "can . . . be divided into two categories." *Id.* The first category involves "'arbitrary' denials of the right to counsel." *Id.* (citing *Fuller v. Diesslin*, 868 F.2d 604, 607 (3d Cir. 1989)). The second category "concerns 'a non arbitrary, but erroneous denial'" of the right to counsel. *Voigt*, 89 F.3d at 1074 (citing *Fuller*, 868 F.2d at 609 n.4).

The arbitrariness comprising the first category of cases does not suggest "arbitrary" in the usual sense of an impulsive or whimsical act. Rather, a denial of the right to counsel is "arbitrary" when it results from "a failure to balance proper considerations of judicial administration against the right to counsel." *Voigt*, 89 F.3d at 1074. In *Voigt*, we also

12

explained that, although the decision to remove counsel of choice need not be based upon a hearing or supported by factual findings formally stated on the record, it must nevertheless be supported by a "reasoned determination on the basis of a fully prepared record." *Id*. (quoting *Fuller*, 868 F.2d at 609 n.4.). In fact, in *Voigt,* we upheld the court's removal of defense counsel even though the court did not conduct an evidentiary hearing. However, there, "the court had before it submissions of the various parties, including sworn affidavits and documentary evidence attached as exhibits." 89 F.3d at 1076. We concluded that "record was fairly substantial." *Id*.

Voigt and several co-defendants were indicted for conspiracy to commit wire fraud and related offenses. The government alleged that certain trusts had been created as part of a scheme to defraud investors, launder funds, and evade taxes. Binns, one of Voigt's defense attorneys, had previously represented the trusts and a codefendant in some capacity, and one of Voigt's codefendants filed a motion to disqualify him from defending Voigt at trial. The motion was supported with an eleven page letter with attached exhibits including correspondence between Binns and the United States Attorney regarding Binns' representation, a memorandum and notes by the codefendant regarding litigation strategies that mentioned Binns, and communications with investors in the trust directing them to contact Binns or deposit funds into an escrow account. *Id*. Binns responded with "ninety-six pages of documentary support" in opposition to the motion. His reply included affidavits, grand jury transcripts, correspondence, and FBI reports. *Id.*

Based upon that voluminous record and the uncontested evidence before the District Court, we held that the District Court's removal of Binns was not arbitrary even though the court did not conduct a hearing before granting the motion. In explaining its reasons for removing Binns, the District Court stated:

> We have here a number of very serious issues. As a matter of fact, I would characterize it really as a foaming caldron of representation issues here. Such that I am convinced that it would be foolhardy for me to go forward and inject potential error and possible violation of the rights of codefendants in what purports to be a lengthy and complicated criminal case right at its inception before we have even heard any motions.
>
> ***
>
> Mr. Binns has had substantial involvement in pre-indictment events concerning the case. . . .We have a letter that he represented [a codefendant] for a limited purpose. We have [the codefendant], according to counsel's submission, saying that he thought Mr. Binns was going to represent him and later saying that he didn't. . . .
>
> And I am convinced, based upon the precedent, that it would be very foolish for me to proceed and to allow [Binns to represent Voigt].... [T]o allow him to come into court and cross-examine other persons based upon his personal knowledge, possibly to examine persons . . . he has represented beforehand, whether directly or otherwise, is exactly the concern that the cases have raised.

*Id*. at 1073. After considering this thorough explanation based upon the court's review of the evidence there, we held that "the record was more than sufficient to enable the District Court to make a reasoned and well informed decision. Formal findings of fact [were] not required." *Id*. at 1076. The situation here is quite different.

14

My colleagues state that the "District Court [here] was presented with a factually-detailed motion from the government . . .". Maj. Opn.. at 7. That factually detailed motion consisted solely of the prosecutor informing the District Court that defense counsel had informed the prosecutor and an ATF agent that defense counsel had seen a similar weapon in the defendant's girlfriend's possession 4 or 5 years earlier. App. at 777-78. That is hardly a "factually detailed motion." I realize, of course, that defense counsel did not dispute that representation, but that does not mean that the motion was "factually detailed" or that the record was fully developed. For example, there was no exploration of whether the girlfriend was available to testify about the gun, and the court never inquired into whether the government and defendant would stipulate to the fact that the girlfriend possessed a similar weapon in the event that testimony became necessary. Rather, the District Court's entire explanation of the Sixth Amendment ruling is as follows:

> I'm inclined to agree with the government on this motion because while it does not quote directly to an element of the offense against this defendant, it is relevant and can be relevant for purposes of proving the case by the government. So that I will grant the government's motion in this matter, and remove counsel as counsel for the defendant.

App. at 786.

Thus, the District Court removed defense counsel because he had "relevant" testimony. Absent any inquiry into alternative ways of producing the same evidence in the

15

event it became relevant, the record simply does not support removing defense counsel.[4]

It is, of course, possible that even if a stipulation had been reached, or the girlfriend was available, the District Court could still have concluded that the balance tipped in favor of removing defense counsel. However, in that event, the record would at least have been more complete and we could then have reviewed the court's balancing for an abuse of discretion. Since this record does not reflect any balancing, there was a *per se* violation of Tinsley's Sixth Amendment right to counsel. As we explained in *Voigt*, "to be nonarbitrary, . . . the District Court actually must make findings based on evidence in the record and weigh these findings against the right to counsel." 89 F.3d at 1077. Given this absence of balancing, we must reverse because the resulting arbitrary denial of counsel is not amenable to a harmless error analysis. *See Voigt*, 89 F.3d at 1077 (stating that the Sixth Amendment right to choice of counsel is "the one area [where] our . . . jurisprudence indicates" that a harmless error inquiry "is singularly inappropriate.").

Moreover, I do not think our inquiry here is advanced by the analogy the majority seeks to draw to the balancing that is required under Fed. R. Evid. 403. My colleagues note

---

[4] The majority notes that disqualification of an attorney has been upheld where the attorney "*might* be called as a witness," Maj. Opn. at 9 (emphasis in original). I agree that it is the *potential* of being called as an adverse witness rather than the certainty that raises concerns about the administration of justice. Nevertheless, I am troubled because, based upon uncontradicted representations at oral argument, it appears that the government never listed Tinsley's attorney as a "potential" witness before the District Court. That unexplained omission is troubling given the prosecution's reliance on counsel's potential testimony as grounds from disqualifying him. I find that contradiction difficult to understand unless the advocacy in the District Court included a bit of adversarial "gotchya."

16

that "we have not hesitated to find satisfied the requisite balancing of probative value and potential prejudicial impact under Fed. R. Evid. 403, even where the District Court does not explicitly go though a balancing inquiry." Maj. Opn. at 7 n. 2 (citing *Ansell v. Green Acres Contracting Company*, 347 F.3d 515 (3d Cir. 2003). Here, we are concerned with the denial of a fundamental right, not the interplay of two conflicting rules of evidence, and our Rule 403 jurisprudence is therefore of little assistance.

The majority also rests its Sixth Amendment analysis on *United States v. Merlino*, 349 F.3d 144 (3d Cir. 2003), and Tinsley cites to it as well as to *Voigt*. However, *Merlino* is a very different case. *Merlino* did not involve an "arbitrary" removal of counsel at all. Rather, in *Merlino*, "[t]he question [was] whether the District Court's ultimate conclusion to disqualify [defense counsel] constituted an abuse of discretion." 349 F.3d at 150. The case is therefore not as helpful as the majority suggests because the absence of the required balancing here raises the issue of an arbitrary denial the right to counsel, not an abuse of discretion. In *Merlino*, we explicitly noted that the court "engaged in the balancing required by the Sixth Amendment . . . ". *Id.* It is quite a stretch to find any such balancing on this record.

In addition, defense counsel's conduct in *Merlino* was nothing short of outrageous, and the case is therefore less analogous to the circumstances here than the majority's analysis suggests. In *Merlino*, defense counsel visited a prison where he spoke with an inmate who was to testify against a leader of an organized crime faction. The discussion the attorney had

17

with that witness was tantamount to an obstruction of justice. The discussion could also have been interpreted as either a subtle threat, or an attempt to lull the witness into lowering his guard so that he might more easily become a target for mob ordered violence. The government also argued that the defense attorney had "smuggled" a five page letter from the mob boss who was about to stand trial to the potential witness. 349 F.3d at 151. Under the circumstances, we held that counsel's visit to the witness "was reason enough for his disqualification." *Id*. at 152. Nothing we said in *Merlino* can enhance this record or create the required balancing where there was none.

Given the state of this record and the absence of the balancing required under *Voigt*, I believe the District Court's removal of defense counsel was arbitrary.

## II. Tinsley's Hearsay Argument

Tinsley also argues that the District Court erred in excluding the testimony of Kadedra Holmes. He claims that evidence was admissible either under the Rule 803(3) state-of-mind exception to the hearsay rule, or as an excited utterance under Fed. R. Evid. 803(2). The majority rejects his claim, not because Tinsley is wrong, but because of the "minimal proffer [he] made at the time." Maj. Opn. at 10. Although I concede that it is a "close call," I disagree with the majority's conclusion that the proffer precludes relief. I also disagree with the majority's statement of the applicable standard of review.

When offering Holmes as a witness, defense counsel stated that "she was present with Mr. Tinsley when he received threatening phone calls on his cell phone." App. at 615. In

18

arguing for the admission of that evidence, counsel stated that he was offering it:

> one, for a nonhearsay purpose, and that is his state of mind. Whether these particular people were really going to kill him or not, I'm not offering it for the truth of the matter asserted. . . But this is classic state of mind evidence. It goes to his state of mind in terms of what he reasonably believed, and it gives us an alternative explanation, alternate from the furtherance of the drug traffic offense explanation for possession a firearm. So that's the purpose of it, the nonhearsay purpose for state of mind.
>
> And even if, as counsel suggests, there were a hearsay issue here, this is clearly an excited utterance. But that is not really what I need to offer it for. Just for his state of mind is because it goes to the intent which is what the inference either way is. *(sic)*. Whether its for self protection or whatever it's for a furtherance of drug trafficking, it's an intent issue, a state of mind issue. This is classic state of mind evidence.

App. at 615-16.

A short while later, after Holmes took the witness stand, defense counsel asked for a sidebar conference during which he again asked that Holmes be permitted to testify about the threatening phone calls. Counsel again argued that Holmes was present when phone calls were made to the defendant's cell phone. Defense counsel argued that Tinsley told Holmes that "the threats - - that I have just been threatened with my life, so she is aware of it. It clearly goes to state of mind, his state of mind, and is clearly relevant. Its not being offered for hearsay purposes, and I would renew my request to offer that evidence. It's classic non-hearsay purpose is state of mind." App. at 623.

My colleague's rejection of that argument is based upon an ultra-technical application

19

of the rules of evidence. They explain: "[t]he proffer . . did not include any indication that Holmes would testify that Tinsley said, 'I'm afraid' – an actual statement of his state of mind. There was no abuse of discretion in excluding evidence based on this proffer." Maj. Opn. at 10. Yet, in rejecting Tinsley's Sixth Amendment argument based upon the District Court's failure to articulate the required balance, the majority proclaims it "will not elevate form over substance and require a District Judge to state explicitly his or her cognizance of a defendant's Sixth Amendment right to counsel[.]"[5] Maj. Opn. at 7-8. However, we are willing to elevate form over substance in denying Tinsley relief by relying upon a very technical interpretation of Tinsley's proffer and thereby upholding a decision to deny admissible testimony.

Tinsley was clearly attempting to have Holmes testify that Tinsley had been threatened. Evidence of the purported threats was not hearsay. *See United States v. Saada*, 212 F.3d 210 (3d Cir. 2000). The testimony was not offered to establish the truth of any threat of harm, but to establish the theat was made, and therefore support Tinsley's claim that he had the gun for self defense unrelated to any involvement with illegal drugs. In *Saada*, we stated: "[N]ot every extrajudicial statement constitutes hearsay. Rather, [i]f the significance of an offered statement lies soley in the fact that it was made, no issue is raised as to the truth of the matter asserted, and the statement is not hearsay." *Id*. at 218 n.8 (citation and internal quotations omitted).

---

[5] Of course, it is not the court's knowledge of Tinsley's right to counsel that is at issue, but whether the court balanced that right on the record.

I realize that defense counsel did not argue that the purported threats amounted to a "verbal act," and to that extent I agree his proffer was lacking. However, the District Court's ruling was not based upon that technicality, nor the one relied upon by my colleagues. Rather, in explaining the rejection of that testimony, the court stated: "I'm not going to permit it because the government has absolutely no way of testing the veracity. And while you may be entering it for a state of mind, it really does rely upon the truth of the matter of what was said, and I'm not going to permit it." App. at 623-624.

However, admissibility of evidence does not turn on the ease with which the party opponent can refute its veracity. Testimony that is admissible under the Rules of Evidence is not transformed into inadmissible testimony merely because the party opponent has only cross-examination to attack its accuracy. Nor is nonhearsay transformed into hearsay merely because jurors may infer the truth of matters that are not offered for the truth of the assertion. Were that the rule, there would be precious few, if any, exceptions to the hearsay rule as the same problem exists with almost any excited utterance or state of mind testimony. In fact, the problem is endemic in the nature of hearsay and its exceptions and is present whenever a court instructs a jury not to accept an out of court statement for the truth of the matter but for the limited purpose of the applicable exception to the hearsay rule. Here, the court's concern that the jury would misuse the evidence should have been addressed by giving a limiting instruction, not by preventing the jury from hearing the testimony.

The majority reviews this claim of error for an abuse of discretion. However, the

21

District Court's rejection of Holmes' testimony was based upon an erroneous interpretation of the Rules of Evidence. Our review of the District Court's interpretation of the Federal Rules of Evidence is plenary; we do not review legal error for an abuse of discretion. *See States v. Brown*, 254 F.3d 454, 458 (3d Cir. 2001). The latter is applied to evidentiary rulings "premised on a permissible view of the law." *United States v. Pelullo*, 964 F.2d 193, 199 (3d. Cir. 1992).

Tinsley's defense was, in part, that he possessed the gun because he had received threats unrelated to any involvement with drugs. The jury certainly may have rejected that claim even if it had heard Holmes' testify about the alleged threats, but Tinsley was entitled to rely upon that testimony in placing his defense before the jury. Accordingly, I am not comfortable relying upon an argument that precluding Holmes' testimony was harmless error. *See, e.g., Government of the Virgin Islands v. Knight*, 989 F.2d 619, 630 (3d Cir. 1993) (District Court's improper exclusion of evidence is not harmless error when it is highly probable that the error contributed to the jury's judgment of conviction). The jury had to decide whether the gun was possessed in connection with Tinsley's drug distribution or for self-defense unrelated to that criminal activity.

The jury did hear evidence that he tried to break up a barroom fight several months before his arrest. That evidence, by itself, could have raised a reasonable doubt about why Tinsley had the gun he was arrested with. However, Holmes' testimony about telephoned threats may well have given the testimony about the barroom fight an added dimension that

22

could have raised a reasonable doubt about his motive for having the gun. Since the jury was not allowed to hear that testimony, I must respectfully disagree with the analysis of my colleagues.