Lance J. GAINES

v.

**Wayne WALKER, Appellant.**

**Wayne WALKER, Member, Metropolitan Police Department, Third District, Appellant,**

v.

**DISTRICT OF COLUMBIA.**

No. 91–7210.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 15, 1993.
Decided March 9, 1993.

Mitchell B. Weitzman, with whom Robert
E. Deso, Washington, DC, was on the brief,
for appellant.

Herbert A. Terrell, Washington, DC, for appellee Gaines.

Karen L. McDonald, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Appellate Div., Washington, DC, were on the brief, for appellee District of Columbia.

Before WALD, RUTH BADER GINSBURG and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

This case arises from an incident in which Wayne Walker, a Metropolitan Police Department officer, punched Lance Gaines in the face in the course of an arrest. Walker claims that he hit Gaines in self-defense after Gaines had drawn a knife; Gaines denies wielding a knife and asserts that Walker's attack was unprovoked. In the district court, the jury credited Gaines' testimony and found Walker liable for assaulting Gaines and violating his constitutional rights. Walker now challenges the district court's judgment on two grounds. First, he contends that the district court erred in dismissing his third-party complaint seeking indemnification from the District of Columbia, which employed him. Second, Walker argues that at trial the district court violated Federal Rule of Evidence 801(d)(1)(B) when it excluded a prior consistent statement—Walker's police report—offered to rebut a claim that Walker had fabricated his in-court testimony about Gaines pulling a knife on him. We find no merit in Walker's indemnification claim, but we conclude that the trial court committed prejudicial error by not admitting Walker's contemporaneous report into evidence. Accordingly, we affirm the district court's judgment in part, reverse it in part, and remand the case for a new trial.

## I. BACKGROUND

### A. *Facts*

At about midnight on February 26, 1987, Officer Walker and his partner, Officer Norbert Savoy, responded to a call for assistance at 14th and Corcoran Streets, Northwest. At the scene, Sergeant Harvey Van Buren, the officer requesting assistance, had detained two women suspected of prostitution. Because there was no room for the women in the police cruisers on the scene, Walker was assigned to watch over the women until another vehicle arrived to transport them to the police station.

What happened next is in dispute. Walker's account is as follows: While he was guarding the suspects, Gaines and another man approached. When the men got within several feet of him, Walker asked, "Could I help you?" Gaines responded, "No, I'm just standing here." Walker, fearing that if Gaines came too close he might swipe Walker's gun from its holster, repeatedly requested Gaines to step back. Gaines did not comply and, apparently drunk, became increasingly belligerent. Finally, Walker warned Gaines that if he did not move back, he would be arrested. Gaines again refused, so Walker, true to his word, attempted to arrest him. But, as he moved toward Gaines, Walker saw him pull a knife from his back pocket. With one hand, Walker grabbed Gaines' wrist and tried to wrest the knife away, and, with the other hand, he punched Gaines in the face. The force of the blow caused the knife to drop from Gaines' hand, and, after a brief struggle, Walker was able to handcuff him. Walker then picked the weapon up off the ground and turned Gaines over to several other officers, who searched Gaines and transported him to the police station.[1]

Gaines' account of the key events is, predictably, different. He claims that, as he was walking out of his apartment with a friend, he noticed lights from police cars parked at the corner of 14th and Corcoran.

---

1. Walker's testimony was corroborated in part by the other officers at the scene. Most importantly, Savoy testified that he saw Gaines reach into his back pocket and that Walker told him immediately after the incident that Gaines had pulled a knife.

Curious about the commotion, he walked over to the scene and stooped on the steps of a nearby church. While Gaines was observing the police activity, Walker strode up to him and, in a "nasty manner," said something like "get out of here." Gaines replied that he was just sitting on private property. As soon as he got those words out, Walker punched him in the face, knocking him unconscious. When Gaines regained his senses, he was lying handcuffed on the trunk of the police car. Then, as he groggily turned to look over his shoulder, Walker attacked him again, shoving his face onto the trunk.

According to Gaines, he did nothing to prompt these assaults; although he was carrying a work knife in a holster on his belt, the weapon remained sheathed throughout and was only discovered by the police when he was searched after being taken to the police station.

### B. Procedural History

On February 24, 1988, Gaines filed suit against Walker under 42 U.S.C. § 1983 and District of Columbia common law, alleging that Walker deprived him of liberty without due process, arrested him without probable cause, violated his rights of assembly and expression, maliciously prosecuted him, assaulted and battered him, and used excessive force in the course of arresting him. The suit also named the District of Columbia as a defendant on the § 1983 constitutional claims, alleging that Walker's actions were taken pursuant to the District's customs and regulations. The district court, relying on *Monell v. Department of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978), dismissed Gaines' claims against the District because Gaines could produce no evidence showing a " 'plausible nexus' between [Walker's] alleged misconduct and any lack of policy, training, or discipline by the District." Walker then filed a third-party complaint alleging a common law right to indemnification from the District for any damages assessed against him in favor of Gaines. The district court dismissed that complaint as well, holding that Walker could only obtain indemnification

from the District if he could show that his conduct was "wholly duty related," a conclusion it found precluded by its prior dismissal of Gaines' constitutional claims against the District.

The residual dispute between Walker and Gaines proceeded to trial in October 1990. The jury awarded Gaines damages on the § 1983 claims as well as on the excessive force and assault and battery counts. The court, however, found insufficient evidence to support the lost wages component of the damages award and vacated the jury's award in part. A new trial was held on the damages issue, and the second jury awarded $20,000 in lost wages; the district court then issued a judgment against Walker for $33,600 in damages and approximately $34,000 in attorney's fees. This appeal followed.

## II. DISCUSSION

### A. Common Law Indemnity

■ Walker first challenges the district court's determination that he cannot obtain common law indemnification from the District. Of course, in assessing Walker's claim, our task is to determine how the District of Columbia's courts would rule on this question. *See, e.g., District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1079 (D.C.Cir.1984). Undoubtedly, a primary consideration in those courts' evaluation would be the District's statute obligating it to recompense a police officer for legal fees, but not money damages, resulting from an alleged wrongful arrest. *See* D.C.Code § 4–143; *cf.* D.C.Code § 1–1215(b) (indemnifying District medical employees for money damages arising from their negligent acts or omissions). In fact, we think that the District's courts would likely find the legislative line-drawing judgment on the question of police indemnification determinative and preclusive of supplemental indemnification under the common law. *Cf. Sonnenberg v. Farmington Township*, 39 Mich.App. 446, 197 N.W.2d 853, 854 (1972) (indemnification of police officers is a matter of discretion); *Sinclair*

*v. Arnebergh,* 224 Cal.App.2d 595, 36 Cal. Rptr. 810, 813 (2d Dist.1964) (same).

■ But, even if a District of Columbia court were to look to the common law, we conclude that it would not find that Walker was entitled to indemnification. Walker's indemnification claim rests in large part on the mistaken premise that as long as his actions were "connected with his official duties," Appellant's Brief at 26, the common law requires the District to recompense him for any damages he may be forced to pay.[2] But, far from imposing an expansive duty on employers in this regard, the common law generally holds agents responsible for their own wrongs; the oft-repeated rule is that a principal is ordinarily not obliged to indemnify an agent for the agent's own tortious conduct. *See, e.g., Brady v. Roosevelt Steamship Co.,* 317 U.S. 575, 580, 63 S.Ct. 425, 428, 87 L.Ed. 471 (1943) ("The liability of an agent for his own negligence has long been embedded in the law."); *Hagen v. Koerner,* 64 N.J.Super. 580, 166 A.2d 784, 786 (App.Div. 1960) ("[T]here is a general rule in the law of agency that an employer cannot be compelled to reimburse an employee for damages the employee may be obliged to pay because of personal injuries to others resulting from his own negligent conduct."); *see generally* Restatement (Second) of Agency § 440(a) (no duty to indemnify agent "for pecuniary loss or other harm, not of benefit to the principal, arising from the performance of unauthorized acts or resulting solely from the agent's negli-

gence or other fault") (hereinafter "RE-STATEMENT").

■ Thus, even if he can base his claim on the common law, Walker cannot rely merely on the general allegation that his alleged misconduct was "connected" to his employment. Instead, he must show that his case fits within one of the narrow exceptions that has been carved out of the common law rule. Walker cites two such exceptions: indemnification is required, he notes, when an agent's "authorized" good faith actions result in liability for tort damages to third persons and, more generally, when it would be inequitable for indemnity not to be required.[3] But, as we show below, neither of those principles applies to Walker's situation.

### 1. Authorization

■ The common law right to indemnification for "authorized conduct" is confined to very limited circumstances. An agent is entitled to indemnification only when she can show both that she acted in good faith reliance on a principal's direction and that she had no reason to believe that her acts were tortious. *See, e.g., Hagen,* 166 A.2d at 787 (exception applies only where agent is "compelled to pay for doing something in good faith, without knowledge of its tortious character, and not illegal, which he was ordered and directed to do"); RESTATE-MENT § 439, comment g ("If ... the agent, *at the direction of the principal,* commits an act which constitutes a tort but which

---

2. The District of Columbia Court of Appeals has not addressed most of the common law indemnification issues in this case; accordingly, on those issues we look to the prevailing rule in other jurisdictions as well as established authority to predict how the District's courts would rule. *See, e.g., Wilson v. Good Humor Corp.,* 757 F.2d 1293, 1308 (D.C.Cir.1985); *Air Florida,* 750 F.2d at 1079 & n. 4.

3. These exceptions are recognized in the RESTATE-MENT. Section 438 provides in relevant part:
   (2) In the absence of terms to the contrary in the agreement of employment, the principal has a duty to indemnify the agent where the agent

   .     .     .     .     .

   (b) suffers a loss which, because of their relation, it is fair that the principal should bear.

Section 439 states:
   Unless otherwise agreed, a principal is subject to a duty to exonerate an agent who is not barred by the illegality of his conduct to indemnify him for:

   .     .     .     .     .

   (c) payments of damages to third persons which he is required to make on account of the authorized performance of an act which constitutes a tort or a breach of contract;

   .     .     .     .     .

   (e) payments resulting in benefit to the principal, made by the agent under such circumstances that it would be inequitable for indemnity not to be made.

the agent believes not to be tortious, he is entitled to indemnity...." ) (emphasis added). Thus, for example, in *Castille v. Folck*, 338 So.2d 328 (La.App.1976), a case that Walker cites, an agent hired to sell a horse was entitled to indemnification when, as a result of the horse owner's assurances, the agent falsely represented to the buyer that the horse had undergone a certain medical test. *See id.* at 333; *see also Hagen*, 166 A.2d at 788 (defendant entitled to indemnification for damages from co-worker's injuries if the defendant could show that his conduct was undertaken pursuant to specific instructions of employer; defendant should not "shoulder the employer's obligation because he was obedient to his employer's instructions"); *Horrabin v. City of Des Moines*, 198 Iowa 549, 199 N.W. 988, 990 (1924) (indemnification allowed where city engineer directed contractor to commit trespass and contractor had reason to believe that city had procured a right for him to use the land).

■ Because Walker cannot point to anything remotely like the specific direction from a principal illustrated by such cases, his conduct cannot be said to be "authorized" in the sense necessary to qualify for common law indemnification. There is no evidence that the District by either action or inaction approved or ratified—even tacitly—the conduct of which Walker is accused, *i.e.*, punching a citizen without provocation during the course of an arrest. Indeed, the district court has already found that there was not even a "plausible nexus" between the District's policies and practices and Walker's alleged actions. Finally, even if there were evidence of "authorization," Walker's claim would fail the common law test because, assuming he did hit Gaines without provocation, he could not have believed in good faith that his conduct was not tortious.

### 2. Equity

■ Walker's reliance on the equity exception to the common law rule against indemnification of an agent's malfeasance fares no better. Walker correctly states that, under some circumstances, in the Dis-

trict of Columbia a duty to indemnify may be implied from the relationship between the parties in order to prevent a result that is " 'unjust or unsatisfactory.' " *National Health Laboratories, Inc. v. Ahmadi*, 596 A.2d 555, 558 (D.C.1991) (quoting *East Penn Manufacturing Co. v. Pineda*, 578 A.2d 1113, 1126 (D.C.1990)). But we note that Walker cites no precedent, either from the District or elsewhere, establishing that this somewhat nebulous principle of equity has ever been applied to require the indemnification of police officers for tortious conduct committed in the line of duty. And, as discussed above, we think it especially unlikely that a District of Columbia court would resort to such a general principle in the face of a specific statute addressing, albeit in a limited fashion, the issue of indemnification of police officers. *Cf. Bell v. City of Milwaukee*, 746 F.2d 1205, 1271 (7th Cir.1984).

■ In the end, however, we need not decide whether the District's courts would ever find an equitable duty to indemnify police officers. Even if equitable considerations may require indemnity in some circumstances, they surely do not here. If Walker behaved in the manner that Gaines alleges, then he could not have believed in good faith that his actions were legal. In such a circumstance, we see no reason to think that a District of Columbia court would find the potential for the type of "unjust or unsatisfactory" result that would require indemnification.

### B. *Admission of Prior Consistent Statement*

Walker's second claim, that the district court erred in excluding a prior consistent statement (his police report filed shortly after the incident), is considerably more persuasive. To explain why, we must provide additional background. At trial, Walker testified that his use of force was prompted by Gaines' attempt to knife him. Predictably, on cross-examination, Gaines' attorney attempted to undermine the credibility of this claim. Laying the groundwork for this effort, Gaines' counsel questioned Walker about the difference be-

tween the crimes of "carrying a deadly weapon" and "possession of a prohibited weapon"; Walker responded that the "possession" crime implies an intent to use the weapon. Gaines' attorney then showed Walker "Exhibit 32," a document detailing the incident completed by the United States Attorney's office, and Walker admitted that whoever completed Exhibit 32 would have likely relied on Walker's "PD–163"— his sworn arresting officer's report about the incident.[4] Walker acknowledged that Exhibit 32 charged Gaines only with the "carrying" offense, which did *not* imply an intent to use the knife, even though the more serious "possession" offense was also listed as an option on that form. Attempting to capitalize on that point, Gaines' attorney asked Walker the following questions:

Q. Well, did you indicate to the United States Attorney or in preparing your form that Mr. Gaines did not intend to use his long knife unlawfully against you?

A. I gave the US Attorney my 163 of what happened that night. I swore to it, and that's based on the information on a 163, the arrest report, and that's what they used.

Q. All right. Just so we have it clear, at no point did Mr. Gaines seek to use his knife against you; is that correct?

A. No, that's not correct.

After Gaines' attorney completed his examination, Walker's attorney tried to introduce Walker's actual PD–163—which clearly mentions Gaines' assault on Walker with a knife—under Federal Rule of Evidence 801(d)(1)(B)[5] as a prior consistent statement submitted to rebut an express or implied charge of recent fabrication. The district court refused to allow admission of the report on the ground that the cross-examination of Walker did not expressly or impliedly make any charge of fabrication. According to the district court, Gaines' attorney merely attempted to show an "inconsistency" in Walker's testimony, that Walker did not say the same thing at trial as he did immediately after the incident, not that Walker's later assertion was a fabrication.

■■■■ This ruling was reversible error.[6] We recognize, of course, that not every attempt to impeach a witness's credibility constitutes a charge of fabrication. *See United States v. Wright*, 783 F.2d 1091, 1099 n. 5 (D.C.Cir.1986). Nor does pointing out inconsistencies between trial and pretrial testimony inevitably constitute such a charge; in some cases, an attorney may be implying only that the witness has a faulty memory, not that he has wilfully altered his account of events. And we are cognizant that our review of the trial court's ruling is only for an abuse of discretion. *See United States v. Montague*, 958 F.2d 1094, 1098 (D.C.Cir.1992). Nonetheless, we conclude that the only reasonable interpretation that " 'fairly arises

---

4. At oral argument, there was some confusion as to whether Exhibit 32 would always be based on the PD–163. Since it is the objective implications of the questioning and testimony that concern us, we think it sufficient that the trial transcript demonstrates that both Walker and Gaines' attorney thought that the PD–163 would always be used in creating documents like Exhibit 32.

Also, the trial transcript is unclear as to whether Exhibit 32 was actually prepared by the United States Attorney's office or the police department. The resolution of that factual matter is not relevant to our analysis either.

5. That Rule states:

A statement is not hearsay if—(1) ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B) consis-

tent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, ....

6. Gaines offers several procedural objections to hearing Walker's claim on this point. Although his argument is not altogether clear, Gaines apparently alleges that Walker's appeal on this issue is barred because he did not present it in a post-trial motion and because he did not attempt to appeal on this ground at the conclusion of the first trial. These claims are meritless. A post-trial motion is not a prerequisite to an appeal, *see* 6A Moore's Federal Practice ¶ 59.-04[11], at 59–28, and there was no final, appealable judgment at the end of the first trial because the question of damages had not been decided, *see, e.g., Freeman v. Califano*, 574 F.2d 264, 268 (5th Cir.1978).

from the line of questioning ... pursued,'" *United States v. Farmer,* 923 F.2d 1557, 1568 (11th Cir.1991) (quoting *United States v. Baron,* 602 F.2d 1248, 1253 (7th Cir.), *cert. denied,* 444 U.S. 967, 100 S.Ct. 456, 62 L.Ed.2d 380 (1979)), is that the cross-examination of Walker went beyond such unexceptional tactics and did in fact amount to a charge that Walker was fabricating his in-court testimony when·he said that Gaines tried to use his knife on him.

Indeed, we think a reasonable juror would find the charge of fabrication to be rather explicit. Gaines' attorney suggested that Exhibit 32 did not charge Gaines with a crime consistent with. use of the knife because Walker's PD–163 did not include that fact. The clear implication of that questioning is that Walker's PD–163 omitted this crucial fact because he did not come up with that accusation until long after he completed the document made contemporaneously with the incident. Moreover, in the excerpt quoted above, Gaines' attorney appeared to explicitly challenge the veracity of Walker's in-court testimony that Gaines had pulled a knife on him by confronting him with a statement 180 degrees opposite from his testimony: "All right. Just so we have it clear, at no point did Mr. Gaines seek to use his knife against you; is that correct?" We conclude that this line of questioning contains a more than sufficiently clear ·charge that Walker's testimony was a recent fabrication to require the district court to allow the PD–163 into evidence under Rule 801. *See United States v. Casoni,* 950 F.2d 893, 904 (3d Cir.1991) ("there need be only a suggestion" that witness consciously altered testimony to allow prior consistent statement into evidence); *United States v. Cherry,* 938 F.2d 748, 755–56 (7th Cir.1991) (cross-examination that challenged the core of witness's testimony constituted implied charge of fabrication).[7]

▆ Moreover, we think that the failure to admit this evidence was especially prejudicial here. When the charge of fabrica-

tion is based on a misleading or partial rendering of a witness's past statements— as opposed to.an attorney's highlighting of actual inconsistencies in a witness's account of events at different times—it is particularly important that the consistent statements be allowed into evidence so that the jury is not left in the dark as to the actual facts. *See United States v. Tarantino,* 846 F.2d 1384, 1411 (D.C.Cir.) ("The opposing party may not pick and choose among prior statements to create an appearance of conflict and then object when this appearance is rebutted by means of a fuller version of. the same prior statements."), *cert. denied sub nom.· Burns v. United States,* 488 U.S. 840, 109 S.Ct. 108, 102 L.Ed.2d 83 (1988); *United States v. Andrade,* 788 F.2d 521, 533 (8th Cir.) (where cross-examination left impression of inconsistency· between witness's in-court testimony and his earlier notes, government was "entitled" to introduce the notes to show that they were entirely consistent with the live testimony), *cert. denied sub nom. Riley v. United States,* 479 U.S. 963, 107 .S.Ct. 462, 93 L.Ed.2d 408 (1986); *cf. Coltrane v. United.States,* 418 F.2d 1131, 1140 (D.C.Cir.1969) (prior consistent statements should be admitted where "they could be of clear help to the factfinder in determining whether the witness is truthful"). Here, the attorney's charges of fabrication were based on the insinuation that Walker's PD–163 did not include the allegation that Gaines pulled a knife. In fact, that document included just· such a claim. The trial court's refusal to allow the jury to have full information on this key point left the factfinders with a skewed understanding of the evidence and must inevitably have prejudiced Walker's case.

## CONCLUSION

We agree that the District of Columbia has no common law obligation to indemnify Walker for any liability he may be held to by Gaines. But we also think that the

---

7. Gaines asserts that his counsel was not alleging that Walker fabricated testimony but was only attempting to make out the elements of a malicious prosecution claim. This argument is

quite beside the point. Our concern here is with what the jury would have inferred from the line of questioning, *see Baron,* 602 F.2d at 1253, not the attorney's intent.

jury's finding on the question of Walker's liability was tainted by the district court's improper exclusion of significant evidence tending to show that Walker did not fabricate crucial parts of his defense testimony. Accordingly, we affirm the district court's judgment on the indemnification issue and remand the case for a new trial on the liability issue.

*So ordered.*