

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-22-2006

# USA v. Frazier

Precedential or Non-Precedential: Precedential

Docket No. 05-4428

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Frazier" (2006). *2006 Decisions.* Paper 139.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/139

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL


IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No:  05-4428

UNITED STATES OF AMERICA

v.

JAMES SEMME FRAZIER,
Appellant

————————————

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court Criminal No. 02-186
District Judge: The Honorable Joy Flowers Conti

————————————

Argued October 24, 2006

Before: SMITH, FISHER, and COWEN, *Circuit Judges*


(Filed: November 22, 2006)


Counsel:      Thomas J. Farrell (Argued)
              1000 Koppers Building

436 7th Ave.
Pittsburgh, PA 15219
*Counsel for Appellant*

Laura S. Irwin
Mary Beth Buchanan
Rebecca Ross Haywood (Argued)
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
*Counsel for Appellee*

_____

OPINION

_____

SMITH, *Circuit Judge*.

James Frazier appeals his conviction on one count of possession of crack cocaine with intent to distribute, in violation of 18 U.S.C. §§ 841(a) and 841(b)(1)(B)(iii). The sole issue raised by Frazier on appeal is whether the District Court erred when it admitted, pursuant to Federal Rule of Evidence 801(d)(1)(B), a prior consistent statement by a police officer witness based on a determination that the defense had raised an implied charge of recent fabrication or improper motive or influence against that witness. Because we agree with the District Court that Frazier's counsel triggered Rule 801(d)(1)(B) by impliedly charging recent fabrication, we will affirm the

Judgment of the District Court.[1]

I.

On June 8, 2002, Officers Phillip Mercurio and Robert Kavals were working plain-clothes patrol in a high drug-traffic neighborhood in Pittsburgh. The officers observed two men engage in a discussion and hand-to-hand exchange that the officers believed to be a drug transaction. After the men completed the transaction, the officers drove their car toward the seller in the transaction (later identified as James Frazier), and stepped out of the car. Mercurio asked if he could speak with Frazier, at which point Frazier ran from the officers. Mercurio pursued Frazier on foot while Kavals followed in the officers' unmarked car.

After Frazier had run approximately twenty feet, Mercurio saw him reach into his right pocket, at which time Frazier pulled out a bag of crack cocaine and dropped it on the ground. As Frazier pulled out the bag, his cell phone also came out of his pocket and dropped onto the ground, though Mercurio

---

[1]Because we will affirm the District Court's Judgment based on the text of Rule 801(d)(1)(B) and applicable precedent, we do not address whether Officer Kavals' testimony was admissible to show the officers' plan or the background of the investigation or as rehabilitation of Officer Mercurio's credibility. Also, because we find no error, we do not address any harmless error arguments.

3

could not tell whether or not Frazier intended to discard the cell phone. With respect to what happened next, Mercurio later testified at Frazier's trial that during his pursuit, he slowed down and picked up the bag of crack and then continued chasing Frazier. At a May 9, 2003 pre-trial suppression hearing, however, Mercurio testified that he continued chasing Frazier without stopping to pick up the crack, and that he retrieved it when he returned to the drop point after Frazier had been apprehended.

Mercurio chased Frazier on foot into an overgrown, abandoned lot, while Kavals blocked the other side of the lot, preventing Frazier's escape. The officers called for back-up and a canine unit to flush Frazier out of the lot so that he could be arrested. Mercurio and Kavals then secured the perimeter and waited for back-up to arrive. According to Kavals' testimony at trial, he asked Mercurio as they were waiting for back-up, "did you get it?," meaning the bag of crack, and also "do we have enough for the intent?" Mercurio responded affirmatively to both questions. The officers eventually arrested Frazier.

On September 10, 2002, a grand jury returned a two-count indictment charging Frazier with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and possession with the intent to distribute five or more grams of crack cocaine, in violation of 18 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). The District Court granted Frazier's motion to sever the two counts, and on October 2, 2003, a jury convicted Frazier of the gun charge. Frazier's appeal before us

4

raises no issues relating to this firearms conviction.

Frazier also proceeded to trial on the drug charge set forth in Count Two of the Indictment. On November 19, 2004, a jury trial on this charge ended in a hung jury. On March 18, 2005, at the conclusion of a second jury trial, a jury returned a verdict of guilty on the drug charge. The District Court sentenced Frazier to 360 months in prison followed by an eight-year term of supervised release.

Frazier's defense at the second trial on the drug charge focused, *inter alia*, on the differences between Mercurio's testimony at a pre-trial suppression hearing and at the trials regarding when he recovered the bag of drugs dropped by Frazier. The defense claimed that Mercurio's testimony at trial could not be trusted owing to the conflicting versions of the retrieval of the crack presented by Mercurio at the suppression hearing and the trial. Based on Frazier's attack on Mercurio's credibility, the District Court, over Frazier's objection, allowed Officer Kavals to testify to the questions he had asked Mercurio while the two were waiting for back-up. The Court ruled that the testimony was admissible as a non-hearsay prior consistent statement pursuant to Federal Rule of Evidence 801(d)(1)(B).

Frazier timely appealed his conviction, raising the single issue of whether Kavals' testimony as to Mercurio's prior consistent statement was properly admitted by the District Court.

## II.

The District Court had original jurisdiction pursuant to 18 U.S.C. § 3231. We exercise jurisdiction over the appeal pursuant to 28 U.S.C. § 1291. A district court's evidentiary rulings are generally reviewed for abuse of discretion. *See Ansell v. Green Acres Contracting Co., Inc.*, 347 F.3d 515, 519 (3d Cir. 2003). We exercise plenary review over a district court's interpretation of the rules of evidence. *Id*. The evidentiary ruling here turned on whether Officer Mercurio's statement to Officer Kavals was offered to rebut a charge of recent fabrication or improper motive. This inherently factual inquiry does not have a sufficient legal component to warrant plenary review by this Court.

"Admission of evidence is an abuse of discretion if the district court's action was arbitrary, fanciful or clearly unreasonable. We will not disturb a trial court's exercise of discretion unless no reasonable person would adopt the district court's view." *Id*. (internal citations and quotations omitted).

## III.

Federal Rule of Evidence 801(d)(1)(B) states that a prior statement by a witness is admissible non-hearsay when it is "consistent with the declarant's testimony and is offered to rebut an express or implied charge of recent fabrication or improper influence or motive." The Supreme Court has said that four requirements must be met in order for prior consistent

statements to be admitted into evidence under Rule 801(d)(1)(B): (1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and, (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose. *Tome v. United States*, 513 U.S. 150 (1995); *United States v. Collicott*, 92 F.3d 973, 979 (9th Cir. 1996).

Requirements one and three are not at issue in this case. The District Court ruled that Officer Kavals could testify to Officer Mercurio's prior consistent statement because Frazier charged that Mercurio's trial testimony was fabricated. We now examine whether Frazier's actions at trial satisfied the two main elements of Rule 801(d)(1)(B) at issue in this appeal: a charge of fabrication and the premotive requirement.

A.

In order for a prior consistent statement to be admitted under Rule 801(d)(1)(B), it must be "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." FED. R. EVID. 801(d)(1)(B). The Supreme Court in *Tome* instructed us that "[p]rior consistent statements may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has

been discredited." 513 U.S. at 158. The purpose of Rule 801(d)(1)(B) is not to "bolster[] the veracity of the story told," but to rebut a charge of recent fabrication or improper influence or motive. *Id. See also United States v. Drury*, 396 F.3d 1303, 1316 (11th Cir. 2005) ("Moreover, and perhaps more significant, prior consistent statements are treated as admissible non-hearsay *only* if they are offered to rebut a specific allegation of recent fabrication, not to rehabilitate credibility that has been generally called into question."). The Supreme Court in *Tome* did not precisely draw the line between types of impeachment that trigger the Rule and types that do not. However, the text of Rule 801(d)(1)(B) and precedent from this Court allow us to discern a standard that district courts should apply in making such determinations.

In drawing this distinction, this Court has stated that "there need be only a suggestion that the witness consciously altered his testimony in order to permit the use of earlier statements that are generally consistent with the testimony at trial." *United States v. Casoni*, 950 F.2d 893, 904 (3d Cir. 1991); *See also Gaines v. Walker*, 986 F.2d 1438, 1445 (D.C. Cir. 1993). Nothing in *Tome* alters the *Casoni* standard, and we will apply it here.

The statement in *Casoni* that "there need be only a suggestion" leaves substantial discretion to the District Court to allow prior consistent statements to be admitted as evidence under Rule 801(d)(1)(B). However, *Casoni* still mandates the suggestion of a *conscious alteration* by the opposing counsel,

8

whether it be in an opening statement or on cross-examination. In this respect, we instruct district courts to consider the warning from the Fifth Circuit that "Rule 801(d)(1)(B) cannot be construed to allow the admission of what would otherwise be hearsay every time a [witness's] credibility or memory is challenged; otherwise, cross-examination would always transform [the prior consistent statement] into admissible evidence." *United States v. Bishop*, 264 F.3d 535, 548 (5th Cir. 2001). The line between challenging credibility or memory and alleging conscious alteration can be drawn when a district court determines whether the cross-examiner's questions reasonably imply intent on the part of the witness to fabricate. Other courts of appeals have drawn a similar line, albeit less explicitly. *See also United States v. Ruiz*, 249 F.3d 643, 648 (7th Cir. 2001); *United States v. Lozada-Rivera*, 177 F.3d 98, 103-04 (1st Cir. 1999); *United States v. Street*, 66 F.3d 969, 977 (8th Cir. 1995). *See also Gaines*, 986 F.2d at 1444 (stating that "in some cases, an attorney may be implying only that the witness has a faulty memory, not that he has wilfully altered his account of events").

Once the proponent of the prior consistent statement has indicated which questions, statements, or arguments by the cross-examiner suggest recent fabrication, a district court must then determine whether a suggestion of conscious alteration has been made. With respect to the standard by which a district court should judge whether Rule 801(d)(1)(B) has been triggered, a judge must make an objective determination based on its examination of the entire trial record to determine whether the impeaching counsel's trial tactics could reasonably be taken

9

by a jury as implying recent fabrication or improper influence or motive.[2]  If a district court determines that the impeaching counsel has, through the court's examination of the entire trial record, made an express or implied charge of recent fabrication or improper influence or motive, then this requirement of Rule 801(d)(1)(B) has been satisfied.

In this case, the District Court did not abuse its discretion when it concluded that counsel for Frazier implied recent

---

[2]The objective determination is a superior standard to the subjective determination, where the district court would assess whether the impeaching counsel actually intended to imply fabrication or improper influence or motive.  The objective determination finds support in the text of the Rule.  Rule 801(d)(1)(B) does not speak of motive on behalf of the cross-examiner.  It instead focuses on whether the opposing counsel's trial tactics constituted an express or implied *charge*.  Whether or not the opposing counsel intended to actually make such a charge is irrelevant.  *See, e.g.*, *United States v. Ettinger*, 344 F.3d 1149, 1160-61 (11th Cir. 2003) (discussing the issue without reference to the examiner's motive); *Lozada-Rivera*, 177 F.3d at 104 (same); *United States v. Cherry*, 938 F.2d 748, 755-56 (7th Cir. 1991) (same).  Further, a trial court is in a better position to make this objective determination than an appellate court because a trial judge considers not only trial tactics that appear in the record but also those that do not.  Examples here include the cross-examiner's tone of voice, gestures, or any other nuances that will not be captured in a trial transcript.

fabrication on the part of Officer Mercurio by suggesting that Mercurio consciously altered his testimony. A strong suggestion of conscious alteration is discernable from the cross-examination of Mercurio conducted by Frazier's counsel. The thrust of the cross-examination suggested that Mercurio testified truthfully at the May 2003 suppression hearing, and that he then altered the details of his testimony at both subsequent trials based on a later-developed motive to facilitate a guilty verdict by improper means. Frazier's counsel pursued this theory as it related to two aspects of the evidence; the cell phone that Frazier dropped during the chase, and the time at which Mercurio recovered the crack that Frazier dropped during the same chase:

> Q. Your testimony here today [on direct examination at trial] was also that you saw Mr. Frazier throw a phone to the ground during the chase . . .
>
> . . .
>
> Q. Besides the November trial from last year, you also testified *under oath* in this courtroom at a hearing on May 9th of 2003, is that right?
>
> . . .
>
> A. Yes, sir.
>
> Q. And, again, at that hearing, you testified *under*

11

*oath* . . . is that right?

A. Yes, sir.

. . .

Q. Before testifying, you met with [the Assistant United States Attorney] to prepare, didn't you?

. . .

Q. And you went over what you remembered of the events of June 8, 2002, is that right?

. . .

Q. And you went over your reports from that night or the day after?

. . .

Q. So that you could provide accurate testimony on May 9th?

A. Yes.

Q. And at that hearing . . . you were asked this question and gave this answer about what Mr. Frazier dropped:

12

> ["]Question: One of the things you mentioned is that as [Frazier] is fleeing . . . you see him drop something. What did you see him drop?["]

> ["]Answer: I saw him drop a clear plastic baggie.["]

Period. That was your entire answer, right?

A. Correct.

Q. You didn't say anything about a phone dropping, did you?

A. Not at that hearing I did not, no.

Q. In fact, what I just read you was cross-examination. But, during your direct examination when you described what you saw fall to the ground, you also failed to make any mention of the phone, is that right?

A. Well, I didn't fail to mention it. I intentionally did not mention it due to the scope of that hearing.

Q. Well, the question I just read to you was simply what did he drop, right?

13

A. Yes.

Q. You weren't asked specifically about crack versus a phone, were you?

A. The scope of that hearing was to determine the legality of the stop . . . [a]nd the cellphone at that point had no bearing on that . . . .

Q. So, your explanation is that you just, given your understanding of the purposes of the hearing, you chose not to mention the phone?

. . .

Q. The hearing was on a motion to suppress the physical evidence that was recovered on the night of June 8, 2002?

A. That's correct.

Q. And that included the crack cocaine, right?

A. Correct.

Q. And it also included the cellphone?

A. That's correct.

14

Q. Now, with respect to when you recovered the bag of crack cocaine, your testimony here today and back in November [at the first trial] was that you recovered it as you were chasing Mr. Frazier, is that right?

. . .

Q. Let's get back to the May 9th, 2003 hearing. You say that was about the admissibility of the crack cocaine, right?

. . .

Q. And you met, as you said, with [the Assistant United States Attorney] before that hearing, right?

. . .

Q. And prepared to give accurate and truthful testimony?

[Objection by the Government, asked and answered; sustained.]

. . .

Q. I'm done with asking about that. Of course, you were not trying to give anything but accurate

15

and truthful testimony on May 9th, 2003.

A. Yes, sir.

Q. At that hearing . . . in your direct testimony you described when you say you recovered the crack cocaine, is that right?

. . .

Q. And your testimony on that day was that you ran past the crack cocaine as it dropped to the ground, right?

A. I mistakenly testified to that, yes.

Q. And continued your pursuit, right?

. . .

Q. Waited until Mr. Frazier . . . had gone into the grove of trees in a different abandoned field, is that right?

. . .

Q. And according to your testimony on May 9th, only then [did] you return[] to Susquehanna Street and picked up the crack cocaine?

. . .

16

Q. And that you returned to recover that crack cocaine only once assisting officers arrived so that you could be sure Mr. Frazier wouldn't leave?

. . .

Q. And you gave that whole description of how and when you went back to get the crack cocaine?

. . .

Q. And you are saying you were just confused on that day?

A. Yes. I mistakenly testified to when it occurred, yes.

Q. *Under oath*?

A. Yes.

A. 183-89 (emphasis added).

Several aspects of this line of inquiry, which was sustained longer than any other in Frazier's counsel's cross-examination of Mercurio, were reasonably susceptible to an interpretation that the inquiry suggested intentional fabrication by Mercurio of some of his trial testimony. Frazier's counsel repeatedly questioned Mercurio about all the preparations he

17

had made to testify truthfully and accurately at the suppression hearing. Frazier's counsel skeptically questioned Mercurio's explanation that he declined to mention the cell phone at the hearing because he was merely testifying to evidence relevant to the scope of the hearing, implying instead that Mercurio omitted mention of the cell phone because the truthful version of events did not include the cell phone.

Furthermore, Frazier's counsel specifically questioned whether Mercurio could possibly have been merely mistaken after giving two different and detailed accounts of how he recovered the crack. In his cross-examination, Frazier's counsel meticulously walked Mercurio through the details of his testimony at the May 9th suppression hearing. He then challenged Mercurio's explanation that he was simply mistaken in his hearing testimony, implying instead that Mercurio testified truthfully at the hearing and intentionally lied at trial.

Also worth noting is the repeated use of the phrase "under oath" in Frazier's counsel's cross-examination of Mercurio. Oaths are administered to witnesses as a reminder to them of their obligation to testify *truthfully*. They are not intended to guarantee *accuracy*. *See* FED. R. EVID. 603 ("Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so."). The fact that a witness is under oath has no bearing on the quality of a witness' memory (such that one is more or less

18

likely to make a mistake under oath). However, being under oath is rife with implications for the witness' intentions. Frazier's counsel's repeated inquiries to Mercurio about being under oath could reasonably be expected to draw the jury's attention not to Mercurio's memory, but to his intentions.

We therefore conclude that Frazier's attorney satisfied the "recent fabrication" element of Rule 801(d)(1)(B) through his cross-examination.

## B.

The Supreme Court has imputed a "premotive" requirement into Rule 801(d)(1)(B), so that statements are only admissible under the rule "when those statements were made before the charged recent fabrication or improper influence or motive." *Tome*, 513 U.S. at 167. The purpose of this requirement is that, in most instances, a consistent statement that predates the motive is more likely to be truthful than a prior consistent statement made after the motive to fabricate arose. *Id*. at 158-59. One potentially difficult issue in this context, which is present in this case, is the degree to which the proponent of the prior consistent statement must define and specify this motive to fabricate.[3] In this sense, the premotive

---

[3]The Supreme Court in *Tome* did not discuss any substantive differences between recent fabrication, influence, and motive. Indeed, the Supreme Court labels the language of Rule

19

requirement reflects the common law temporal requirement that any motive to fabricate must have arisen after the prior consistent statement in order for the statement to be admissible. *See id*. at 159. Frazier urges this Court to interpret Rule 801(d)(1)(B) and *Tome* as requiring the proponent of the prior consistent statement to show the district court when the alleged influence or motive to fabricate arose.

Frazier's proposed standard is too demanding. The Supreme Court in *Tome* did not speak to who has the burden to show when the alleged motive arose. Rather, the Court acknowledged that

---

801(d)(1)(B) as "somewhat peculiar." *Tome*, 513 U.S. at 159. One reasonable reading of Rule 801(d)(1)(B) is that "recent fabrication" does not even contain a motive component because the text of the Rule addresses each type of charge separately. However, the majority opinion in *Tome* appears to apply its premotive requirement to all of the charges against the declarant listed in Rule 801(d)(1)(B). For example, the majority opinion uses the phrase "motive to fabricate" five times. We are thus bound by the Supreme Court to apply the premotive requirement in "recent fabrication" cases as well as "improper influence or motive" cases. *See id*. at 165 ("If the Rule were to permit the introduction of prior statements as substantive evidence to rebut every implicit charge that a witness' in-court testimony results from recent fabrication or improper influence or motive, the whole emphasis of the trial could shift to the out-of-court statements, not the in-court ones.").

20

[w]e are aware that in some cases it may be difficult to ascertain when a particular fabrication, influence, or motive arose. Yet . . . a majority of common-law courts were performing this task for well over a century . . . and the [party objecting to the prior consistent statement] has presented us with no evidence that those courts, or the judicial circuits that adhere to the rule today, have been unable to make the determination.

*Id*. at 165-66. This statement implies that the premotive inquiry is interrelated with the fabrication/motive/influence inquiry, and should for the most part be left to the sound discretion of the district court. Put differently, under the abuse of discretion standard, a district court's determination on the premotive requirement–which should be made after an examination of the parties' positions, the record, and the Court's own judgment–will not be reversed unless "no reasonable person would adopt the district court's view." *Ansell*, 347 F.3d at 519.

Several courts of appeals have adopted, at least implicitly, the position that a *Tome* premotive analysis requires the district court to consider the entire record rather than requiring the proponent to offer a specific date on which the motive arose. *See, e.g.*, *United States v. Londondio*, 420 F.3d 777, 784-85, 785 n.3 (8th Cir. 2005), *United States v. Trujillo*, 376 F.3d 593, 611 (6th Cir. 2004) (deciding the premotive issue

"[b]ased upon [their] review of the record"); *United States v. Ruiz*, 249 F.3d 643, 648 (7th Cir. 2001); *United States v. Fulford*, 980 F.2d 1110, 1114 (7th Cir. 1992).

The facts of this case illustrate why a deferential stance must be taken with respect to the District Court's factual finding on when the motive to fabricate arose. In this case, Frazier asserts that the defense at trial alleged no recent fabrication or improper motive, but simply argued that Mercurio told inconsistent stories under oath. Frazier cites to several passages from the trial transcript that he asserts imply no more than confusion or mistake by Mercurio. The Government counters that the defense at trial did imply recent fabrication by Mercurio owing to an improper motive to increase the likelihood of Frazier's conviction. Although a reasonable factfinder could have found otherwise, the record supports the District Court's finding that the defense implied that Mercurio altered his trial testimony in order to improperly make Frazier's conviction more likely.[4]

The record supports the Government's argument that Officer Kavals' prior consistent statement predated any motive

---

[4]We do not decide today the degree to which a proponent of the prior consistent statement must define and specify the motive when "improper influence or motive" rather than "recent fabrication" is at issue. We do hold that this motive is sufficient in the "recent fabrication" context when the other requirements of *Casoni* have been met.

Mercurio might have had to fabricate his testimony at the November 14, 2004 trial. Frazier's counsel's cross-examination of Mercurio implies that Mercurio told the truth at the May 9, 2003 suppression hearing but then fabricated his story at trial. The conversation with Officer Kavals occurred on June 8, 2002. While the Government does not provide a specific date for when Officer Mercurio's purported fabrication might have occurred, this Court will not impose such a specific requirement. The premotive requirement will be satisfied if a district court can reasonably determine from the record a range of time when a motive to fabricate could have arisen after the prior consistent statement. In this case, the motive to fabricate must have been formed sometime between the initial testimony at the suppression hearing and the first trial, where Officer Mercurio's testimony was more damaging to Frazier.

We accord deference to a district court under the abuse of discretion standard of review. We agree that the District Court could reasonably have concluded that any motive to fabricate by Officer Mercurio must have arisen after the initial post-suppression hearing. The District Court here acted reasonably–and certainly did not abuse its discretion–in concluding that the premotive requirement of Rule 801(d)(1)(B) was satisfied.

IV.

The District Court properly admitted Officer Kavals' prior consistent statement as nonhearsay pursuant to Rule

23

801(d)(1)(B).  Therefore, we will *affirm* the Judgment of the District Court.